UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOLAR INTEGRATED ROOFING CORP., <br><br> Plaintiff, <br><br> v. <br><br> HUNTER BALLEW, *et al.*, <br><br> Defendants. | Case No. 22-cv-0028-BAS-JLB <br><br> **ORDER:** <br><br> **(1) GRANTING PLAINTIFF'S *EX PARTE* REQUEST FOR LEAVE TO FILE SUR-REPLY (ECF No. 29);** <br><br> **(2) DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER (ECF No. 16); and** <br><br> **(3) SETTING BRIEFING SCHEDULE FOR PLAINTIFF'S APPLICATION FOR PI** |

Before this Court is Plaintiff Solar Integrated Roofing Corp. ("SIRC")'s application for a temporary restraining order ("TRO") and preliminary injunction ("PI"), effectively seeking to freeze 45,000,000 shares of SIRC's common stock held by Defendants Hunter Ballew ("Ballew") and Upward Holdings Group, LLC ("UHG," together, "Defendants").

(App., ECF No. 16; Mem. ECF No. 16-1.) Defendants oppose (Opp'n, ECF No. 24) and SIRC replies (Reply, ECF No. 26). This Court finds the TRO application suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the reasons set forth below, the Court **DENIES** SIRC's application for a TRO, and **ORDERS** the parties the pending application for a PI pursuant to the schedule at *infra* Sec. IV. (ECF No. 20.)

## I. BACKGROUND[1]

### A. Factual Background

In approximately February of 2021, SIRC, "a publicly traded Nevada corporation that specializes in residential and commercial solar power throughout the United States," informed Ballew through an intermediary that it was interested in acquiring Ballew's company Cornerstone Construction Team, LLC ("CCT"), a licensed roof-contracting South Carolina limited liability company, focused on residential and commercial roofing and solar. (Compl. ¶¶ 7, 16, ECF No. 1; Massey Decl. ¶ 2, ECF No. 16-3; Ballew Decl. ¶ 3, ECF No. 24-1.) Ballew travelled from South Carolina to San Diego, California, where he met with SIRC's Chief Executive Officer David Massey ("Massey") on approximately February 10, 2021 to discuss SIRC's possible acquisition of CCT. (Massey Decl. ¶ 7; Ballew Decl. ¶¶ 3–4.)

On February 11, 2021, Massey sent Ballew a letter of intent setting forth the parameters of SIRC's acquisition of CCT as a subsidiary and a deal to bring Ballew onboard as president of CCT ("LOI"). (Ballew Decl. ¶ 5; LOI ¶ 1(b), Ex. 1 to Ballew Decl., ECF No. 24-2.) The LOI conditioned the transaction upon SIRC's "satisfactory completion of due diligence," including, *inter alia*, "a complete review of [CCT]'s financial, legal, tax, environmental, intellectual property and labor records and agreements, and any other matters as [SIRC]'s accountants, tax and legal counsel, and other advisors

---

[1] The Court incorporates by reference its Background section in its Order denying SIRC's *ex parte* application to shorten time and repeats that information here only to the extent necessary to frame issues pertinent to SIRC's request for a TRO. (ECF No. 23.)

deem relevant." (*Id.* ¶¶ 3–4.) SIRC's due diligence investigation commenced on February 17, 2021, when Massey requested, and Ballew produced, CCT's profit and loss statement, balance sheet, and "QuickBook" entries (collectively "CCT's Financials") for the financial year ending ("FYE") December 31, 2020 ("2020 FYE"). (CCT QuickBook Entries, Ex. 4 to Ballew Decl., ECF No. 24-5; 2020 CCT Financials, Ex. 11 to Witoslawski Decl., ECF No. 16-13.)[2]

On or about February 24, 2021, SIRC and Ballew entered into two agreements: the Stock Purchase Agreement ("SPA") and the Executive Employment Agreement ("EEA"). (Massey Decl. ¶¶ 11, 12; *see* SPA, Ex. 7 to Massey Decl., ECF No. 16-8; EEA, Ex. 8 to Massey Decl., ECF No. 16-9.) Under the SPA, Plaintiff acquired from Ballew a 100% interest in CCT in exchange for (1) a cash payment of $3,000,000 ("SPA Payment") and (2) 45,000,000 restricted common shares of Plaintiff's stock with a total cost basis of $22,500,000, or $0.50 per share ("Payment Shares").[3] (SPA § 1.02; *see also* Massey Decl. ¶¶ 14, 15.)

Ballew made several representations and warranties within the SPA, including, *inter alia*:

- **Section 3.06, Financial Statements**: All financial statements and balance sheets of [CCT] provided to [SIRC] during the course of negotiating this Agreement are based on the books and records of [CCT] and Fairly present in all material respects the financial condition of the [CCT] as of the respective dates they were prepared and the results of the operations of the [CCT] for the periods indicated.

\* \* \* \*

---

[2] Wanda Witoslawski was SIRC's Chief Financial Officer at all times pertinent to the allegations in the Complaint. (Witoslawski Decl. ¶ 2.)

[3] The SPA contains a "Make-Whole Provision" that provides "[i]n the event and to the extent that, by the close of business on the one-year anniversary of the Closing," defined in the SPA as March 1, 2021, "the total value of Payment Shares issued to [Ballew] . . . does not have a market value of at least $45,000,000, then and in such event, [SIRC] shall issue, as an integrated part of the overall Purchase Price, additional shares . . . at the then per share market price to make up any short-fall in value." (SPA § 1.03.)

- **Section 3.14, Compliance with Laws [and] Permits**: (a) [CCT] has complied, and is now complying, with all Laws applicable to it or its business, properties, or assets[; and] (b) [a]ll permits, licenses, franchises, approvals, registrations, certificates, variances, and similar rights obtained or required to be obtained, from Governmental Authorities (collectively, "Permits") that are required for [CCT] to conduct its business . . . have been obtained and are valid and in full force and effect.

The SPA is governed by California law. Furthermore, it contains a provision entitled "Submission to Jurisdiction" under which the parties agree that "[a]ny legal suit, action, proceeding, or dispute arising out of or related to [the SPA] . . . may be instituted in the federal courts of the United States of America or the courts of the State of California in each case located in the city of San Diego and county of San Diego, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, proceeding, or dispute." (SPA § 8.08.)

For reasons not articulated in its papers, SIRC launched an investigation into "apparent disparities in CCT's Financials" in approximately March of 2021.[4] (Massey Decl. ¶ 16; Witoslawski Decl. ¶ 4.) SIRC engaged Eide Bailey LLP ("EBL") and Ciro Adams, CPA ("CIRO") "to assist in [SIRC's investigation[.]" (Massey Decl. ¶¶ 3, 20; Witoslawski Decl. ¶¶ 6, 16.)

---

[4] SIRC does not explain why it became wary of the veracity of CCT's Financials when it did—after it was apparently satisfied with its due diligence investigation to move forward with the SPA. (*See* LOI ¶ 4 (conditioning SPA on satisfactory due diligence investigation).) Ballew contends that SIRC's investigation into CCT's financial condition and performance was not prompted by genuine concern about CCT's condition or Ballew's performance but rather "was meant as a tool for [Massey] to renegotiate [the SPA and EEA]." (Ballew Decl. ¶ 15.) (Ballew Decl. ¶ 16 ("Throughout May and June of 2021, [Massey] kept asking me to renegotiate the deal memorialized by the SPA.").) In support of this assertion, Ballew proffers several text messages and emails between himself and Massey. (Text Strings, Exs. 5–7 to Ballew Decl., ECF Nos. 24-6–24-8; Renegotiation Email, Ex. 8 to Ballew Decl., ECF No. 24-9.) Of particular note is an email thread dated June 3, 2021, in which Massey offered to make Ballew "CEO of [SIRC]," in exchange for which Ballew would trade in 40,000,000 of the 45,000,000 Payment Shares for "[5,000,000] Class B Preferred Shares & 100% of Class A Preferred Shares." (Renegotiation Email at 1.) Ballew declined the offer. (*Id.*) The Court observes that Massey offered Ballew to take the helm of SIRC well after (1) he purportedly became concerned about CCT's Financials and (2) a CCT employee informed him CCT was not authorized to install solar in the states in which it purportedly operated, as explained below.

SIRC tasked ELB with reviewing CCT's Financials in order to "adjust[t] entries . . . to make the CCT's Financials more accurately reflect CCT's income and expenses for the [2020 FYE]." (Witoslawski Decl. ¶ 7.) EBL prepared a "summary of the adjusting entries," which SIRC proffers in connection with its TRO and PI application. (EBL's Adjustment Summary, Ex. 12 to Witoslawski Decl., ECF No. 16-14.) EBL's Adjustment Summary reflects that although CCT's Financials understated its total income for the 2020 FYE ($11,601,941.41 (in EBL's Adjustment Summary) to $11,315,560.82 (in CCT's Financials)), CCT also understated its costs and thus its Financials reflected a 2020 FYE net income of $336,680.09 when, according to EBL, that figure purportedly should have been $177,701.55 after appropriate adjustments.[5] (*Id*.)

Additionally, on June 18, 2021, Massey wrote CIRO: "It sounds like the numbers that [CCT] gave us are fraudulent[,] is that the case?" (CIRO Memorandum, Ex. 15 to Witoslawski Decl., ECF No. 16-17.) Accordingly, CIRO conducted an "audit" into CCT's Financials. CIRO provided Massey with an email memorandum on July 12, 2021, recommending a "proposed adjustment" to CCT's Financials in the amount of $628,890 to account for contracts that had not been completed but that CCT had purportedly recognized as revenue nonetheless. (*Id*.)[6]

While SIRC's investigation into CCT's Financials was ongoing, a CCT employee revealed to Massey that CCT lacked the requisite licensures "to legally install solar products" in certain states in which CCT purportedly had been operating before it was acquired by SIRC.[7] Notably, Ballew contends "[t]he claim that CCT was not licensed as

---

[5] The Court notes that EBL's Adjustment Summary consists of a ledger with adjustments to the revenues and costs set forth in the CCT Financials provided by Ballew; SIRC does not proffer documentary or testimonial evidence elucidating the basis for each adjustment.

[6] The CIRO Memorandum also sets forth several other conclusory adjustments to CCT's Financials for which it provides no reasoning. (CIRO Memorandum at 1 (recommending CCT (1) "accrue $264,208 of commission and subcontractor costs not recorded"; (2) "to accrue $36,776 in solar material costs recorded in a subsequent period"; (3) "to write off $50,000 in inventory that does not exist"; (4) "to reduce the revenue $202,997 for projected misstatements.").)

[7] The declarations submitted by SIRC in support of this point are somewhat unclear as to which states CCT purportedly lacked licensure to operate. In his declaration, Massey claims that CCT employee

a solar installer ignores the fact that in those areas in which CCT did solar business [it] hired out subcontractors who had the appropriate solar license to do the work." (Ballew Decl. ¶ 24.)

On July 8, 2021, Ballew produced to SIRC CCT's profit and loss statement for the first quarter of 2021 ("Q1 Statement"). (Massey Decl. ¶ 10; Q1 Statement, Ex. 13 to Witoslawski Decl., ECF No. 16-15.) The Q1 Statement disclosed that CCT's net income for the period between March and May of 2021 was negative (-) $979,713.10. (Q1 Statement at 2.) Shortly thereafter, Ballew was terminated from his position as president of CCT. (Massey Decl. ¶ 22.)

In approximately July of 2021, around the same time he was let go from SIRC, Ballew organized Upward Holdings Group, LLC (previously defined as "UHG") and placed therewith 38,750,000 of his Payment Shares as his capital contribution.[8] (Ballew Decl. ¶ 21; *see* SIRC's Shareholder Report, Ex. 4 to Massey Decl., ECF No. 16-6.) Ballew attests that he formed UHG "as a result of advice [he] received for financial planning for . . . family and business purposes" (Ballew Decl. ¶ 21), while Plaintiff contends Ballew formed UHG as a shell company "to conceal and avoid liabilities related to the underlying SPA transaction (Massey Decl. ¶ 4).

Ballew declares under penalty of perjury that he "ha[s] not sold any [Payment Shares] to date, nor ha[s] [he] threatened to do so" since this litigation commenced. (Ballew Decl. ¶ 22.)

B.   **Procedural History**

SIRC initiated this action on January 10, 2022. (Compl., ECF No. 1.) The Complaint asserts twelve causes of action, including, *inter alia*, fraudulent inducement,

---

Paul Head notified him that CCT lacked the requisite licensing to install solar products in South Carolina, North Carolina, Louisiana, and Alabama. (Massey Decl. ¶ 19.) However, in the Head Declaration, he attests that CCT lacked requisite licensure to legally operate solar in Louisiana, Florida, and North Carolina. (Head Decl. ¶ 8.)

[8] Neither side disputes that the remaining 6,725,000 Payment Shares remain in Ballew's possession. (*See* SIRC Shareholder Report.)

misrepresentation, and concealment; negligent misrepresentation; fraud in the connection with the sale and purchase of securities; avoidance and recovery of fraudulent transfer; and breach of contract. The Complaint seeks relief in the form of, *inter alia*: (1) a minimum of $25,500,000 in damages; (2) a preliminary injunction "enjoining [D]efendants . . . from engaging in the wrongful and illegal acts alleged," including their allegedly fraudulent transfer of Payment Shares; and (3) rescission of the SPA. (*Id.* at pp. 39–40.)

On February 15, 2022, SIRC filed the instant application seeking to enjoin Ballew and UHG from transferring, selling, or otherwise encumbering the Payment Shares. (*See* Mot.) SIRC principally argues that a TRO is justified because it is likely to succeed on the merits of its claims sounding in fraud and, thus, it will be statutorily entitled to the remedy of rescission of the SPA. It further avers that if that remedy is not preserved with a TRO and/or PI, it will suffer immediate and irreparable harm because Defendants will remain able to sell or transfer the Payment Shares, which could (1) depress SIRC's share price or (2) render it impossible for SIRC to recoup the Shares if it is ultimately successful after an adjudication of the merits of this case. (Mem. 20–21.) SIRC claims that irreparable harm is imminent based on Ballew's prior history of transferring Payment Shares to UHG and because Ballew did not provide sufficient assurance he would refrain from selling some or all of the Payment Shares pending resolution of Plaintiff's PI application. (*Id.*).

Defendants oppose SIRC's application on principally two bases. (Opp'n.) First, they argue that this Court should hold in abeyance its ruling on SIRC's application until it resolves UHG's pending Rule 12(b)(2) and (3) motion challenging both personal jurisdiction and venue (ECF No. 20). (Opp'n 9–10.) Second, they aver that SIRC fails to satisfy the elements of the *Winter* Test.

On March 25, 2022, SIRC moved *ex parte* to supplement its TRO application to reflect that on March 2, 2022, Ballew, by and through his counsel, requested that SIRC and its transfer agent remove the restrictive legend from the Payment Shares. (Sur-Reply, ECF

No. 29; Removal Letter, Ex. A to Sur-Reply, ECF No. 29-2.)[9] SIRC avers that this attempt to remove the constraints limiting dissipation of the Payment Shares suggests that he imminently plans to sell them.  (Sur-Reply.)

## II.  LEGAL STANDARD

Although district courts have discretion to issue preliminary injunctive relief "to preserve the status quo between the parties pending a resolution of a case on the merits," *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012) (citing *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010)), "[t]he Supreme Court has emphasized that [temporary restraining orders and] preliminary injunctions are 'an extraordinary remedy never awarded as of right.'"  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (quoting *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("*Winter*")).[10]

A movant seeking a temporary restraining order "must satisfy *Winter's* four-factor test" ("*Winter* Test").  *Garcia*, 786 F.3d at 740 (citing *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012)); *accord Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 725 F.3d 940, 944 (9th Cir. 2013).  Under this test, a movant must establish "(1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the movant's favor; and (4) a preliminary injunction is in the public interest."  *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) (setting forth the "*Winter* Test" (citing *Winter*, 555 U.S. at 20)).[11]

---

[9] Because SIRC explains how the Removal Letter bears upon its request for a TRO and because SIRC could not possibly have presented this evidence to the Court when it first applied for preliminary relief, the Court **GRANTS** SIRC's request for leave to file its Sur-Reply and attendant exhibits.  (ECF No. 29.)

[10] Although the Supreme Court in *Winter* expatiated the proper standard for granting or denying a preliminary injunction, it is well-settled that the standard for issuing a temporary restraining order and a preliminary injunction is "substantially identical."  *Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co.*, 240 F.3d 832, 839 & 839 n.7 (9th Cir. 2001).

[11] Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction assuming the other two elements of the *Winter*

A district court should issue a temporary restraining order only when there is a "clear showing that plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22; *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, buy a clear showing, carries the burden of persuasion."). "[T]he burden of proof at the preliminary injunction stage tracks the burden of proof at trial." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011). Failure to establish a likelihood of irreparable harm dooms a movant's request for pretrial injunctive relief. *See Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985) (opining "[u]nder any formulation of the test, plaintiff must demonstrate that there exists a threat of irreparable injury" and concluding that without such a showing a court need not reach the other *Winter* Test factors); *accord Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011) ("Because Plaintiffs have failed to show that they are likely to suffer irreparable harm in the absence of preliminary relief . . . we need not address the district court's analysis of the remaining elements of the [PI] standard.") (internal quotation marks and citation omitted).

## III. ANALYSIS

### A.  Personal Jurisdiction as a Predicate to the TRO/PI Application

A "federal court may issue an injunction [only] if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court." *Duncan v. Cal. Healthcare Receivership Corp.*, No. 1:20-cv-1288-AWI-SKO (PC), 2021 WL 2337227, at *1 (E.D. Cal. June 8, 2021) (quoting *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983)); *see also Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387 (9th Cir. 1995) (reversing district court's contempt order

---

[T]est are also met." *All for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir 2011) (interpreting *Winter* and explaining that the "sliding scale" test for preliminary injunctive relief remains valid). A "serious question" is one which the movant "has a fair chance of success on the merits." *Sierra On-Line Inc. v. Phoenix Software Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

against defendant for violation of injunction after finding court lacked requisite personal jurisdiction).

Defendants assert that this Court cannot issue injunctive relief because it lacks personal jurisdiction over UHG. (Opp'n 9–10.) UHG avers that it is not a citizen of California, was not served in California, and does not have minimum contacts with California. Moreover, UHG alleges that the "Submission to Jurisdiction" provision of the SPA does not apply to it as a non-party and that the allegedly fraudulent transfer of Payment Shares from Ballew out of which SIRC's theory of liability against UHG arises did not occur in California. (*Id.*) Accordingly, UHG asserts this Court lacks general and specific jurisdiction over it. Alternatively, Defendants request that the Court hold in abeyance resolution of the TRO and PI applications until it addresses UHG's pending motion pursuant to Rule 12(b)(2) and (b)(3) to dismiss for lack of personal jurisdiction and for improper venue, respectively, which is based on the above-mentioned arguments (ECF No. 20).[12] (*Id.*)

As an initial matter, the Court notes that even if UHG's personal jurisdiction arguments have merit, nothing precludes the issuance of a TRO or PI against Ballew. *See Rosenfield v. HSBC Bank, USA*, No. 10-cv-00058-MSK, 2010 WL 195019, at *2–3 (D. Colo. Jan. 13, 2010) (issuing TRO against only the defendant over whom court had jurisdiction). Indeed, Ballew does not aver in Defendants' Opposition that this Court lacks personal jurisdiction over him, nor does he separately move pursuant to Rule 12(b)(2) or (b)(3) for dismissal. One need not look any further than the "Submission to Jurisdiction" provision of the SPA Ballew executed to explain why. *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315–16 (1964) ("[I]t is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court."). Put simply, by agreeing to the terms of the SPA, in particular its Submission to Jurisdiction provision, Ballew waived his right to challenge personal jurisdiction or venue in this Court and, thus, to

---

[12] UHG filed its Rule 12(b)(2) and (b)(3) motion on February 17, 2022. (ECF No. 20.) As of the date of this Order, briefing has yet to be completed.

contest a TRO or PI application on that ground. *E.g.*, *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704–05 (1982) ("Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other rights be waived); *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221 (9th Cir. 1989) (opining personal jurisdiction may be waived by contract).

Having established that there exists no procedural roadblock foreclosing resolution of the TRO application respecting Ballew, the Court further concludes that it need not address the merits of UHG's personal jurisdiction argument here because it finds SIRC fails to establish the requisite *Winter* Test elements immediate and irreparable harm. *Cf. Ospina v. Baraya*, No. 3:21-CV-00640-FDW-DSC, 2021 WL 6072606, at *2 (W.D.N.C. Dec. 23, 2021) ("Even if the Court were to assume Plaintiff made a *prima facie* showing of personal jurisdiction, Plaintiff's Motion would still fail, as Plaintiff has not shown he is entitled to the extraordinary relief he seeks based on the four *Winter* factors.") (emphasis in original).

### B. Likelihood of Irreparable Harm in the Absence of Injunctive Relief

As mentioned above, to prevail on an application for a TRO, a movant must show it is "likely to suffer irreparable harm in the absence of preliminary relief." *See Sierra Forest Legacy*, 577 F.3d at 1021. This *Winter* Test element is indispensable. *Herb Reed Enters, LLC v. Fla. Entertainment Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013) ("In light of our determination that the record fails to support a finding of likely irreparable harm, we need not address the balance of equities and public interest factors). Indeed, a court need not consider the remaining *Winter* Test factors if a movant fails to establish a likelihood of irreparable harm. *See Vilsack*, 636 F.3d at 1174.

The irreparable harm prong of the *Winter* Test really encapsulates two separate requirements. First, a movant must establish that the injury that will arise should a TRO be denied is of an "irreparable" nature. "Irreparable harm is traditionally defined as a harm for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (citing *Rent-A-Ctr., Inc. v.*

*Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)). The plaintiff must show a "sufficient causal connection" between the alleged injury and the conduct the plaintiff seeks to enjoin such that the injunction would effectively minimize the risk of [the irreparable] injury. *Perfect 10, Inc. v. Google, inc.*, 653 F.3d 976, 982 (9th Cir. 2011); *see also Garcia*, 786 F.3d at 745 (reasoning there is a "mismatch" between the plaintiff's substantive claim "and the dangers she hopes to remedy through an injunction.")

Second, a movant must show "more than a 'possibility' of 'irreparable injury,'" *see JBF Interlude 2009 Ltd. v. Quibi Holdings, LLC*, Nos. 2:20-CV-02299, 2:20-CV-02250-CAS (SKx), 2020 WL 7314845, at *2 (C.D. Cal. Nov. 5, 2020), but rather it must "demonstrate *immediate* threatened injury as a prerequisite to a [temporary restraining order]," *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis added); *see Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999) ("A preliminary injunction may only be granted when the moving party has demonstrated a significant threat of irreparable injury, irrespective of the magnitude of the injury.").

Here, SIRC avers it is likely to suffer two types of injury absent an order enjoining Defendants from selling or transferring the Payment Shares. First, it claims that if Defendants "were to attempt to sell [the Payment Shares] in the open market, it would cause irreparable harm to SIRC's share price." (Mem. 9 (quoting Massey Decl. ¶ 27).) But "[l]osses due to depressed stock prices" are monetary losses and "do not constitute irreparable harm." *Bofi Federal Bank v. Erhart*, No. 15-cv-2353-BAS(NLS), 2016 WL 4680291, at *8 (S.D. Cal. Sept. 7, 2016) (citing *Beztak Co. v. Bank One Columbus, N.A.*, 811 F. Supp. 274, 285 (E.D. Mich. 1992)); *cf. Hybred Int'l v. Thorne Legal, Inc.*, No. CV-08-4343 (CPS) (KAM), 2008 WL 5068896, at *5 (E.D.N.Y. Nov. 24, 2008) ("[T]he value of the stock . . . can be compensated."). Moreover, the causal connection between Defendants' hypothetical sale of any or all the Payment Shares and a subsequent depression of SIRC's share price purely is conjectural. All SIRC proffers in support of its assertion that Defendants' sale of the Payment Shares would cause a precipitous decline in SIRC's value is a conclusory attestation of its CEO without any explanation as to why such an

outcome would ensue. (Massey Decl. ¶ 27 ("[I]f Ballew were to attempt to sell [the Payment Shares] in the open market, it would cause irreparable harm to SIRC's share price.").) SIRC's failure to lay out for this Court a nexus between Defendants' prospective sale of the Payment Shares and a dip in SIRC's share price dooms this strand of its TRO application. *See Mazurek*, 520 U.S. at 972; *see also Giftango LLC v. Rosenberg*, 925 F. Supp. 2d 1128, 1140 (D. Or. 2013) (declining to issue an injunction where the plaintiff "provid[ed] no evidence that the claimed loss . . . [was] real and imminent, not just speculative or potential").

Second, SIRC claims that if Defendants were to sell the Payment Shares on the open market or covertly transfer those Shares to an unknown entity, it would inflict irreparable harm upon SIRC because it "would be impossible for SIRC to get [the encumbered Payment Shares back, thereby foreclosing on SIRC's remedy of recission." (Massey Decl. ¶ 27; *see* Mem. 9–10.) However, "[t]he majority of courts . . . have rejected the notion that monetary damages are not an adequate remedy at law for common stock available on the open market." *Alpha Capital Anstalt v. Shiftpixy, Inc.*, 432 F. Supp. 3d 326, 339–40 (S.D.N.Y. 2020) (citing *Union Capital LLC v. Vape Holdings, Inc.*, No. 16 Civ. 1343 (RJS), 2017 WL 1406278, at *6 (S.D.N.Y. Mar. 31, 2017) (finding damages associated with common shares for which plaintiff claimed entitlement were readily ascertainable) and *LG Capital Funding, LLC v. PositiveID Corp.*, No. 17 CV 1297, 2017 WL 2556991, at *7 (E.D.N.Y. June 9, 2017)); *accord C.R.A. Realty Corp. v. Freemont Gen. Corp.*, 5 F.3d 1341, 1343 (9th Cir. 1993) ("Shares of stock are as fungible as bushels of wheat."). Accordingly, the Court finds this injury to be primarily pecuniary in nature.

In so holding, the Court finds significant that there is no dispute between the parties concerning the value of the Payment Shares. *Cf. HIMC Corp. v. Ramchandani*, No. C07-5342 FDB, 2007 WL 2257567, at *3 (W.D. Wash. Aug. 3, 2007) (granting PI to preserve rescission where "there was a dispute about the price of the stock at issue"). SIRC and Defendants agree that the value of the Payment Shares at the time of the SPA was $22,500,000 ($0.50 per share), and, thus, the amount to which SIRC would be entitled as

restitution for the lost Shares in the alternative to rescission is not only ascertainable but settled. *See DCR Workforce, Inc. v. Coupa Software Inc.*, No. 21-cv-6066-EMC, 2021 WL 4776700, at *11 (N.D. Cal. Oct. 13, 2021) (holding that "stock issuance of set value from a public company" and the return of cash associated with claim for specific performance were "both compensable at law"). Indeed, the Complaint seeks monetary relief in the form of at least $25,500,000 in special, general, and consequential damages, the minimum being equal to the equivalent to the combined value of the SPA Payment ($3,000,000) and the cost basis of the Payment Shares ($22,500,000). In other words, the Complaint lays bare that SIRC's injuries are compensable through monetary damages. *See Alpha Capital Anstalt*, 432 F. Supp. 3d at 340 (denying TRO seeking to enjoin common stock, finding the complaint's request for damages in the same amount as the value of the disputed shares showed "damages c[ould] be readily ascertained").

Having established that SIRC avers principally economic harm, the Court next turns to the question whether any of the limited circumstances in which courts have issued preliminary relief to protect against such injuries exist here. *See Kraus v. Harder*, No. 03-1198-MO, 2004 WL 716576, at *7 (D. Or. Mar. 31, 2004). Courts in this Circuit have found that preliminary relief may issue to enjoin economic harm, *inter alia*, where (1) "the very existence of a party's business is at stake" or (2) "when the plaintiff's chances of ever executing a damage judgment are immediately threatened." *Id.* (citing, *inter alia*, *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 250 (2d Cir. 1999)). SIRC does not provide any evidence invoking either of these limited exceptions.

Even assuming dissipation of the Payment Shares were to cause irreparable as opposed to pecuniary harm or that unique circumstances nonetheless favor injunctive relief (both of which SIRC has failed to show), SIRC's TRO application still fails because SIRC has not established the immediateness of any injury. Indeed, SIRC does not dispute that since it commenced this action Defendants have neither dissipated, or threatened to dissipate, the Payment Shares. (Ballew Decl. ¶ 22.) SIRC is correct that courts consider non-movants' past behavior in assessing the likelihood of irreparable harm. (Mem. 18);

*see Prizant v. Abbott*, No. 3:20-CV-01604, 2020 WL 6204629, at *6 (S.D. Cal. Sept. 9, 2020). However, for a court to infer from *prior* behavior the defendant will engage in *future* misconduct entails a "high burden" that must be supported by evidence of past "fraudulent transfers or [of] diversion of funds or other financial misconduct" to warrant an asset freeze. *JBF Interlude 2009 Ltd.*, 2020 WL 9311954, at *29.

    The record in the instant proceeding reflects that Ballew transferred 38,750,000 Payment Shares to UHG in approximately July of 2021—six months before SIRC commenced the instant litigation. SIRC does not allege this transaction was unauthorized under the SPA nor does it allege that either Ballew or UHG have since dissipated a single Payment Share. This is not strong historical evidence to infer Defendants will likely dissipate the Payment Shares in the future. *See Earth Gen BioFuel Inc. v. Fink*, No. 2:16-cv-7161-ODW (SS), 72017 WL 35415, at *3 (C.D. Cal. Jan. 24, 2017) (finding "immediate" element of irreparable harm analysis was missing where record demonstrated only that defendant had transferred assets plaintiff sought to enjoin *before* the action commenced).

    SIRC makes much of a group of cases in which movants obtained pre-trial injunctive relief to preserve the remedy of rescission. (Opp'n 18 (collecting cases).)[13] As an initial matter, the Court observes that none of these cases challenge the well-established legal precedent that the decision to issue temporary or preliminary injunctive relief rests within the discretion of the district court. Put differently, these cases do not stand for the proposition that the issuance of injunctive relief is *required* to preserve the remedy of rescission—particularly where there also exists an adequate remedy at law—but rather that a court does not necessarily abuse its discretion when it does so. *Jimenez v. Barber*, 252 F.2d 550, 554 (9th Cir. 1958). Moreover, several of the cases upon which SIRC relies involve materially distinguishable fact patterns that render inapposite the analogy SIRC

---

[13] SIRC cites *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878 (9th Cir. 2003); *Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009); *In re Focus Media Inc.*, 387 F.3d 1077 (9th Cir. 2004); *FTC v. Affordable Media*, 179 F.3d 1228 (9th Cir. 1999). (Opp'n 18.)

seeks to draw by citing them. For example, in *Connecticut General Life Insurance Company v. New Images of Beverly Hills*, 321 F.3d 878 (9th Cir. 2003) and *In re Focus Media Inc.*, 387 F.3d 1077, 1086 (9th Cir. 2004) the Ninth Circuit affirmed the trial courts' issuances of injunctive predicated upon proven instances of fraudulent transfers that had occurred *after* litigation had commenced. *Id.* at 881. Here, SIRC has only identified a single transfer in July of 2021, which occurred approximately six months *prior* to the start of this proceeding. (Massey Decl. ¶ 21; Ballew Decl. 21.) Furthermore, *Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009) involved purportedly fraudulent transfers from the defendant to nonparties to the case. Here, however, Ballew not only is "an owner, officer, and/or director" of the entity to whom he transferred Payment Shares, that entity is also a named Defendant before the Court. (Compl. ¶ 3.)

Finally, SIRC argues that Ballew's apparent refusal to provide assurances regarding future dissipation of the Payment Shares indicates that he imminently plans to sell the Payment Shares on the open market. However, this "is not evidence of the type of financial misconduct that warrants injunctive relief." *JBF Interlude 2009 Ltd.*, 2020 WL 9311954, at *30; *see also TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, No. CV 10-5447-PSG-JEMX, 2010 WL 3119254, at *3 (C.D. Cal. Aug. 2, 2010) (assertions of "reasonable and good faith belief" that the [Defendants] intended to remove the funds at issue from Plaintiffs' reach insufficient to support an asset freeze). Nor is the Court persuaded by SIRC's assertion that Ballew's Removal Letter "sets in motion [Defendants] imminent sale of the Payment Shares in a public marketplace." (Sur-Reply 5.) The removal of constraints on Defendants' rights to transfer, sell, or otherwise encumber the Payment Shares does not equate to evidence of an imminent plan to do so.

Accordingly, this Court finds SIRC fails to establish the "irreparable harm" prong of the *Winter* Test. As explained above, this deficiency precludes the issuance of a TRO and, thus, the Court need not consider SIRC's likelihood of success on the merits or any of the remaining *Winter* Test factors. *See Vilsack*, 636 F.3d at 1174. However, the Court warns Defendants that if they subsequently threaten or endeavor to dissipate or otherwise

encumber the Payment Shares, a renewed application for a TRO by SIRC would rest upon more solid foundation.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES WITHOUT PREJUDICE TO RENEWAL** SIRC's application for a TRO. The Court further **ORDERS:**

- SIRC to file its brief in support of its PI application **by no later than April 8, 2022**;

- Defendants shall oppose **by no later than April 15, 2022**; and

- SIRC shall reply **by no later than April 22, 2022**.

**IT IS SO ORDERED.**

**DATED: March 28, 2022**

Hon. Cynthia Bashant
United States District Judge